UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CARL ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:13-cv-01449 |
| | ) | Judge Aleta A. Trauger |
| v. | ) | |
| | ) | |
| BOHDAN FARBOTA and M.P. EXPRESS, INC., | ) ) | |
| | ) | |
| Defendants, | ) | |

# MEMORANDUM

The defendant has filed a Motion for Partial Summary Judgment (Docket No. 36), to which the plaintiff has filed a Response in opposition (Docket No. 39), and the defendant has filed a Reply (Docket No. 41). For the reasons stated herein, the motion will be granted.

# BACKGROUND

## I. Overview

Plaintiff Carl Adams alleges that, on September 9, 2013, he was involved in a motor vehicle incident with a tractor trailer operated by defendant Bohdan Farbota and owned by defendant M.P. Express, Inc. ("MPE"). Adams alleges that, while the vehicles were traveling on an interstate highway in Tennessee, Farbota's tractor trailer merged into Adams' lane without signaling and struck the front passenger side of Adams' vehicle, thereby causing Adams to swerve and temporarily lose control of his vehicle. Adams alleges that his vehicle nearly struck the median wall before he regained control. Adams alleges that he was injured during the

1

accident.[1]  In his Amended Complaint (Docket No. 23), Adams claims that (1) Farbota is liable to him because Farbota's negligent operation of the tractor trailer caused the accident, and (2) MPE is liable for Farbota's conduct (a) on a vicarious liability basis and (b) for negligently hiring, training, retaining, and supervising Farbota.[2]

## II. Adams' Claimed Back Injury

Based on discovery in this case, it appears that Adams claims that the accident has caused him to suffer low back pain.  At deposition, Adams testified that his back pain interferes with some of his daily activities, such as sitting for long periods of time or lifting a substantial amount of weight.  (Adams Dep. at 68:1-14.)  However, he also testified that no medical provider has told him that (a) he is permanently impaired as a result of the accident, or (b) that he will require any future medical treatment.  (Adams Dep. at 68:15-22 and 57:22-58:1, respectively).  Moreover, medical records and testimony indicate that Adams may have suffered low back pain and received multiple forms of treatment for that condition for years before the accident, including physical therapy, exercise, medication, chiropractic treatment, and steroid injections.  (*See, e.g.*, Adams Dep. at 131:6-132:2 and 159:3-162:15.)  Also, when Adams visited Dr. Paul

---

[1] The Amended Complaint alleges Adams' injuries in generalized language, stating that he (1) "sustained severe, permanent painful personal injuries from which he has endured and shall continue to endure pain, suffering, emotional distress, and the loss of ability to participate in and enjoy the pleasures of life[.]" (¶ 18); and (2) "has incurred and shall continue to incur medical expenses, past, present, and future lost earnings and lost earning capacity for the treatment of said injuries in said vehicular accident . . . ."  (¶ 19.)

[2] Adams' original Complaint (Docket No. 1, Ex. A, at PageID #: 6-11) identified the tractor trailer's driver as a "John Doe."  In his Amended Complaint, filed on July 23, 2014, the plaintiff identified the driver as Bohdan Farbota.

McCombs, a physician at Howell Allen Clinic, he stated on a medical history questionnaire that his injury was *not* caused by an automobile accident.[3]

As set forth in the next section, Adams appears to claim that the accident caused him to suffer a back injury (or at least to make a pre-existing injury worse), that the injury is permanent, that it has caused him to incur medical expenses, that it will cause him to incur future medical expenses, and that it has resulted in lost earning capacity. In their Motion for Partial Summary Judgment, the defendants seek summary judgment on these categories of damages, contending that Adams should not be permitted to present the expert testimony required to support them.

### III. Procedural History

On November 25, 2013, Adams filed this lawsuit in Tennessee state court against MPE, an Illinois corporation with a principal place of business in Illinois. (Docket No. 1, Ex. A.) On December 23, 2013, MPE removed the case to this court on the basis of complete diversity. Docket No. 1.) On February 24, 2014, the court held an initial case management conference and issued an initial Case Management Order on February 25, 2014 (the "CMO"). (Docket No. 16.) In relevant part, the CMO obligated (1) the parties to make initial disclosures under Rule 26(a)(1) by March 25, 2014 (28 days from the date of the order), (2) the plaintiff to "declare the

---

[3] At deposition, Adams claimed not to recall his pre-accident treatment, although he did not dispute the veracity of the records themselves. For example, although records indicate that he received steroid injections thirty times, including one injection just two weeks before the accident, Adams testified that he did not remember receiving any of those injections. (Adams Dep. 156:15-157:16.) Adams also seemed to disclaim any personal recollection of the disclosures written on the September 18, 2013 medical questionnaire that he filled out during his post-accident visit with Dr. McCombs. (*See, e.g.*, Adams Dep. at 127:9-128:20.) In the deposition excerpt in the record, these discrepancies eventually precipitated a dispute among Adams, Adams' counsel, and defense counsel. (164:5-167:24.) Because the transcript excerpt on the docket ends before this on-the-record discussion had concluded, it is not clear how (or if) this issue was resolved.

identity of any expert witnesses and provide all of the information specified in Rule 26(a)(2)(B)" by August 30, 2014 (¶ H)[4], and (3) the defendants to "declare the identity of any expert witnesses and provide all of the information specified in Rule 26(a)(2)(B)" by October 15, 2014. The CMO also obligated the parties to file all supplements to their expert reports by November 15, 2014 and to depose all expert witnesses by December 15, 2014. In a separate Order Setting Case for Trial, the court set the case for trial on July 7, 2015 and set associated pretrial deadlines, including a June 15, 2014 deadline to file motions *in limine*, a June 24, 2015 filing date for witness and exhibit lists, and a June 29, 2015 pretrial conference date.

In violation of the scheduling order, Adams did not make initial disclosures on March 25, 2014.

On July 23, 2014, with leave of court, Adams filed an Amended Complaint that identified defendant Farbota by name (Docket No. 23), to which Farbota and MPE filed a joint Answer on August 21, 2014 (Docket No. 24).

Adams did not make an expert disclosure on August 30, 2014, which was the plaintiff's expert disclosure deadline set forth in the CMO.

On September 4, 2014, the defendants deposed Adams. At the deposition, Adams provided testimony that conflicted with the face of his medical records, including records related to his treatment by Dr. Paul McCombs at the Howell Medical Clinic. On September 11, 2014, the defendants informed Adams of their intent to depose Dr. McCombs but, for HIPAA reasons, asked Adams to coordinate scheduling the deposition. (*See* Docket No. 37, Ex. F.) Defense counsel offered deposition dates in September and early October – before the defendants' October 15, 2014 expert disclosure deadline. (*Id.*)

---

[4] With respect to ¶ H, the court adopted language proposed by the parties.

On October 1, 2014, the defendants filed an unopposed motion for leave to extend their October 15 expert disclosure deadline to December 15, 2014 (the "Motion to Extend"). (Docket No. 26.) In support of the motion, the defendants represented that they had learned information at Adams' deposition that would require the deposition of Dr. McCombs, but that, because of scheduling difficulties with Dr. McCombs, the deposition could not be scheduled until November 19, 2014.[5] The defendants also represented (correctly) that Adams had not identified any expert witnesses on August 30, 2014, and that the deposition was therefore necessary for the defendants to determine whether they would need to declare any experts.

About fifteen minutes after the defendants filed their Motion to Extend on October 1, 2014, Adams' counsel filed a so-styled "Plaintiffs' Preliminary Initial Rule 26 Disclosures." (Docket No. 27.) Adams had not made initial disclosures before that date.[6] Although the deadline to serve the initial disclosures had passed on March 25, 2014, Adams did not seek leave of court to extend his initial disclosure deadline, nor did he offer any explanation for the delay. As to the contents of these disclosures: (1) in a section entitled "Witnesses," the document identifies "Medical providers at Howell Medical Clinic" but does not reference Dr. McCombs by name, and (2) in a section entitled "Damages," the document lists the following five categories of damages: (a) medical expenses in the amount of $46,270.71; (b) future medical expenses according to proof; (c) general damages according to proof; (d) lost wages according to proof;

---

[5] As noted above, counsel for the defendants offered to depose Dr. McCombs on multiple dates in advance of the defendants' original October 15, 2014 expert disclosure deadline under the CMO.

[6] Parties typically serve their initial disclosures without filing them, because filing is not required. In addition to making the disclosures over six months after the CMO deadline, Adams chose to file his October 1, 2014 Rule 26(a) disclosures in addition to serving them.

(e) permanent impairment according to proof. Adams' October 1, 2014 disclosures do not identify any experts.

On October 2, 2014, several weeks after receiving the defendants' notice of intent to depose Dr. McCombs for discovery purposes, the plaintiff noticed the deposition of Dr. McCombs "for proof."[7]

On October 7, 2014, the court granted the defendants' Motion to Extend their expert disclosure deadline. (Docket No. 28.) The October 7, 2014 Order did not extend Adams' expired deadlines, including Adams' initial disclosure and expert disclosure deadlines, both of which he had missed.

On October 10, 2014, the defendants, out of precaution, served a cross-notice of the McCombs deposition. Counsel for both sides appeared on November 19, 2014 to take that deposition. However, the deposition did not take place (and the parties postponed it) because a dispute arose between counsel as to how the deposition should proceed in light of Adams' desire to depose Dr. McCombs "for proof." As defense counsel later represented to the court, he believed that he was appearing to conduct a discovery deposition concerning the care and treatment that Dr. McCombs had provided to Adams. However, at the deposition, it became apparent to defense counsel that Adams was planning to utilize the deposition to elicit expert

---

[7] In Tennessee state court, practicing physicians are exempt from being called to testify at trial, although they may be subpoenaed to testify by deposition. *See* Tenn. Code Ann. § 24-9-101(a)(6). In federal court, there is no analogous exemption for physicians otherwise subject to the subpoena power of the court. To the best of the court's knowledge, Dr. McCombs practices within the subpoena jurisdiction of this court, and the court is not aware of any grounds on which Dr. McCombs would be otherwise "unavailable" at trial under Fed. R. Civ. P. 32(a)(4). Absent special circumstances or the not uncommon agreement of the parties, Dr. McCombs' testimony (at least as it relates to Adams' case in chief) would therefore be presented at trial in person, not by deposition.

testimony from Dr. McCombs in support of his case in chief, even though the plaintiff had never designated McCombs as an expert or disclosed the nature of, and basis for, his opinions.

On December 1, 2014, Adams' counsel forwarded to defense counsel a letter from Adams' counsel to Dr. McCombs dated October 29, 2014. (Docket No. 33, Ex. 4; Docket No. 39, Ex. 2 (same).) In the letter to Dr. McCombs, Adams' counsel had posed six questions to Dr. McCombs concerning Dr. McCombs' treatment of Adams and the potential causes of any injuries that had required treatment after Adams' September 9, 2013 accident. From the face of the document, it appears that Dr. McCombs filled out some of the response portions of the letter and counter-signed the letter on November 15, 2014. In substance, Dr. McCombs simply checked "yes" to three of the six questions without providing a narrative explanation, answered "yes" to two more questions and provided only conclusory one-sentence explanations, and left the sixth question blank.[8] Whatever its purpose and substantive worth, Adams did not disclose this letter to defense counsel until December 1, 2014.

On December 3, 2014, the defendants filed a Motion for Leave to File Motion for Partial Summary Judgment (Docket No. 30) with a supporting Memorandum of Law (Docket No. 31). In support of the motion, the defendants noted that Adams had not made initial disclosures until October 1, 2014 – over six months late. (Docket No. 30 at p. 1 n.1.) In the attached proposed Rule 56 motion and associated proposed Memorandum, the defendants also explained that,

---

[8] For example, in response to the question of whether "MVC more likely than not caused injury to Mr. Adams?", Dr. McCombs checked "yes" and provided no explanation for his answer. With respect to the question "Do you believe that the MVC more likely than not aggravated a preexisting condition that Mr. Adams had before it occurred?," Mr. Adams similarly checked "yes" and provided no explanation for his answer.

7

because Adams had not produced any expert disclosures under Rule 26(a)(2), he could not prove several categories of claimed damages at trial. (Docket No. 30 at Attach. Nos. 1 and 2.)

On December 15, 2014 (twelve days after the defendants had filed their request for leave to file the instant Rule 56 motion), Adams filed a Motion to Modify the Initial Case Management Order. (Docket No. 32.) Among other requests, Adams sought to "extend" – retroactively – several long-expired deadlines. In particular, Adams asked the court to extend his August 30, 2014 expert disclosure deadline (which had expired over ten weeks earlier) to January 31, 2015, to extend the November 15, 2014 deadline to supplement expert reports (which had expired 30 days earlier) to March 15, 2015, and to extend the expert deposition deadline (which expired on December 15, 2014, the same date as his motion) to April 15, 2015. Adams also moved to extend the dispositive motion deadline from February 27, 2015 to June 15, 2015. Given that the court had set a July 7, 2015 trial date and associated pretrial deadlines that began in mid-June, Adams essentially sought to move the entire case back six months and to force a change to the original trial date.

The defendants have also represented that, on the same date that Adams filed his *post hoc* extension request (December 15, 2014), Adams also served a document on the defendants that purported to be a Rule 26(a)(1) expert disclosure. That document does not appear to be in the record before the court.

On December 17, 2014, Adams filed a Response in opposition to the defendants' request for leave to file a Rule 56 motion. (Docket No. 33.) Adams attached what he described as a "signed medical report from Dr. Paul McCombs, the neurosurgeon who operated on Plaintiff[.]" Adams represented that Dr. McCombs "is expected to testify about the relationship between the car accident at issue and the medical treatment rendered[,] . . . the necessity of past and future

8

medical treatment and the reasonableness of medical expenses." Adams attached the November 15, 2014 countersigned version of the October 29, 2014 letter from his counsel to Dr. McCombs, which Adams self-servingly docketed as "Dr. Paul McComb's [sic] causation report." (*See* Docket No. 33, Attach. No. 4.)

On December 18, 2014, the defendants filed a Response to Adams' *post hoc* motion to modify the CMO deadlines. (Docket No. 34.) In their Response, the defendants asserted that Adams had not shown good cause for the modification, as required by Fed. R. Civ. 16(b)(4).

On December 22, 2014, the court ruled on the defendants' pending motion for leave to file a partial Rule 56 motion and Adams' motion to modify the CMO. (Docket No. 35.) The court denied Adams' request to extend the CMO deadlines, finding that he had not shown good cause. The court granted the defendants' request for leave to file a motion for partial summary judgment. The defendants filed the instant Motion for Partial Summary Judgment later that day. (Docket No. 36.) In support of the motion, the defendants have filed a Memorandum of Law (Docket No. 37) and a Statement of Undisputed Material Facts (Docket No. 38). Adams has filed a Response in opposition (Docket No. 39) and a Response to the defendants' stated facts (Docket No. 40). The defendants have filed a Reply. (Docket No. 41.)

## SUMMARY JUDGMENT STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To win summary judgment as to the claim of an adverse party, a moving defendant must show that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim. Once the moving defendant makes its initial showing, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting]

9

forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## ANALYSIS

### I. Undisputed Tennessee Requirement of Expert Testimony to Support Certain Categories of Damages Claims

Both parties agree that Adams cannot recover damages for past and future medical expenses, permanent impairment, and loss of earning capacity without presenting expert proof at trial. (*See* Docket No. 39, Adams' Response at pp. 1-2 (conceding that expert proof is required).)

#### A. Past Medical Expenses

Under Tennessee law, a plaintiff seeking to recover past medical expenses must present expert testimony to prove (1) that his past medical expenses were reasonable and necessary and (2) that the injury was, in fact, caused by the incident at issue. *See Miller v. Choo Choo*

10

*Partners, L.P.*, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001); *Klamborowski v. Johnson*, 2014 WL 2002140, at *4 (Tenn. Ct. App. May 13, 2004); *Athari v. Gamboa*, 2013 WL 6908937, at *3 (Tenn. Ct. App. Dec. 30, 2013) (citing *Borner v. Autry*, 284 S.W.3d 216, 218 (Tenn. 2009)).

### B. Future Medical Expenses

In Tennessee, "persons seeking future medical expenses must present evidence (1) that additional medical treatment is reasonably certain to be required in the future and (2) that will enable the trier-of-fact to reasonably estimate the cost of the expected treatment." *Singh v. Larry Fowler Trucking, Inc.*, 390 S.W.3d 280, 287 (Tenn. Ct. App. 2012). Thus, "the standard for receiving medical evidence of future medical treatment or expense must be based upon a reasonable degree of medical certainty." *Lemmons v. Marien*, 1988 WL 55016, at *2 (Tenn. Ct. App. June 3, 1988) (citing *Kincaid v. Lyerla*, 680 S.W.2d 471 (Tenn. Ct. App. 1984)).

### C. Permanent Impairment

Except in the most obvious cases, a finding of permanent impairment must be based on expert testimony. *Owens Ill., Inc. v. Lane*, 576 S.W.2d 348 (Tenn. 1978) ("The determination of the issue of permanency of all but the most obvious injuries, such as a loss of a member, is peculiarly within the realm of scientific knowledge."); *see Henley v. Alexander*, 2002 WL 100402, at *13 (Tenn. Ct. App. Jan. 28, 2012) (citing *Sanders v. Johnson*, 859 S.W.2d 329, 331 (Tenn. Ct. App. 1993)). Here, as Adams implicitly concedes, the permanency of his claimed back injury is not "obvious" – indeed, he testified that no physician has told him that he is permanently impaired –and, therefore, he must present expert testimony at trial to prove and recover for a permanent impairment.

### D. Lost Earning Capacity

To show a loss of earning capacity as an element of damages, a plaintiff must prove: (1) the existence of some earning capacity prior to the injury, (2) proof that this earning capacity has been lost or diminished, (3) proof that the lost or diminished earning capacity is proximately caused by the injury, and (4) proof of the dollar amount of the loss. *Oglesby v. Riggins*, 2011 WL 915583, at *6 (Tenn. Ct. App. Mar. 27, 2011) (citing 29 Am. Jur. 3d *Proof of Lost Earning Capacity* § 6 (1995)) (emphasis added). In Tennessee, the "general rule is that where the physical impairment can be objectively ascertained, and where its connection to impairment of earning capacity is obvious or ascertainable from other evidence, then separate medical testimony is not required to establish the elements of proximate cause between impairment and earning capacity." *Id.* However, where "the physical impairment is obscure or subjective, or where the connection between the physical impairment and earning capacity is not obvious, then expert medical testimony may be essential." *Id.* Thus, where an alleged physical impairment is not obvious, the causal relationship between the impairment and the defendant's alleged injury-causing conduct must be established by expert medical testimony. *Messer v. Knoxville*, 1987 WL 20070, at *4 (Tenn. Ct. App. Nov. 23, 1987).

Here, implicitly acknowledging that his claimed injury is not an "obvious" injury, Adams concedes that he must offer expert testimony at trial to prove his claim for lost earning capacity.

## II. Whether Adams Can Present the Necessary Testimony

### A. Federal Rules 26 and 37

The parties dispute whether Adams can offer expert testimony at trial in support of these categories of damages. The defendants argue that Adams did not, and still has not, made the requisite expert disclosure, thereby forfeiting the right to present expert proof at trial. Adams argues that he has complied with the CMO or that his error has not prejudiced the defendants and

12

should be excused. This issue involves consideration of the Federal Rules of Civil Procedure and the CMO in this case.

Under Rule 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Rule 26(a)(2) divides experts into two categories: (1) an expert "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony," who must provide a written report under Rule 26(a)(2)(B) (hereinafter, a "retained expert"); and (2) any expert who does not need to provide a written report under Rule 26(a)(2)(B) (hereinafter, a "non-retained expert") (*see* Rule 26(a)(2)(C)).

Here, Adams has not disclosed any retained experts subject to the Rule 26(a)(2)(B) reporting requirement. However, with respect to the categories of damages at issue, Adams now seeks to present the required causation expert testimony through treating physician Dr. McCombs as a non-retained expert subject to Rule 26(a)(2)(C).[9]

Under Rule 26(a)(2)(C), the expert disclosure for a non-retained expert must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is

---

[9] In their initial brief, the defendants in part argued that Adams had not complied with Rule 26(a)(2)(B)'s expert report requirement. Adams' submissions to that point had referred to the McCombs Letter as a "causation report" or as a "signed medical report", and Adams apparently compensated Dr. McCombs for filling it out. Furthermore, Adams never made an expert disclosure in this case under the federal rules. Under the circumstances, it is understandable that the defendants were under the impression that the plaintiff may have sought to claim that the purported "report" from Dr. McCombs was a Rule 26(a)(2)(B) report. The plaintiff's Response clarified that he instead regards McCombs as Rule 26(a)(2)(C) expert, a contention that the defendants have rebutted in their Reply.

expected to testify.[10] As to the timing of this disclosure with respect to a plaintiff's case in chief, a plaintiff must either (a) "make these disclosures at the times and in the sequence that the court orders", or (b) in the absence of a court order, "at least 90 days before the date for trial or for the case to be ready for trial[.]" Fed. R. Civ. P. 26(a)(2)(D).

Under Rule 37(c)(1), when a party fails to provide information or identify a witness as required by Rule 26(a), the party presumptively is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1) (current 2015). The court also retains equitable discretion to impose a less severe sanction, if justified. *Id.* As explained in *Roberts ex rel. Johnson v. Galen of Va.*, 325 F.3d 776 (6th Cir. 2003):

---

[10] The Advisory Committee Notes to the 2010 amendments, which added Rule 26(a)(2)(C), explain its purpose and function:

> Rule 26(a)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
>
> This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).
>
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

14

> Rule 37(c)(1) provides several remedies to a district judge who is faced with violations of the mandatory disclosure provisions of Rule 26. The provision on sanctions explicitly states in pertinent part that "in lieu of this sanction of [total exclusion], the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions." Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety.

*Id.* at 783-84. Thus, a district judge retains discretion to fashion an equitable remedy that is "consonant with both the text and logic of Rule 37(c)(1)." *Id.* at 784; *see also Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (stating that the Sixth Circuit will reverse "a court's invocation of Rule 37 sanctions only if we find an abuse of discretion"). Of course, excluding an expert witness's testimony for failure to comply with the court's expert disclosure deadline is an available option that courts within this circuit commonly exercise, even where it effectively precludes a plaintiff from recovering claimed damages in whole or in part. *See, e.g.*, *Campos v. MTD Prods., Inc.*, 2009 WL 2252257, at *9 (M.D. Tenn. July 25, 2009); *Hall v. Furest*, 2006 WL 2375677, at *3 (E.D. Mich. Aug 16, 2006); *Hardison v. Wagstrom*, 2014 WL 7139997, at *7-*8 (M.D. Tenn. Dec. 12, 2014).[11]

---

[11] Although the defendants did not reference Rule 37 in their opening brief, their primary argument was that Adams could not offer the requisite medical expert testimony at trial because he did not disclose Dr. McCombs in compliance with the CMO deadline and the Rule 26(a)(2) substantive requirements. That position tracks the self-executing first sentence of Rule 37(c)(1), which states that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (d), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." In response to that argument, Adams argues that he should be permitted to present testimony from Dr. McCombs at trial because (1) he did not violate the CMO, or (2) if he did violate the CMO, the error was harmless under Rule 37 because the defendants were on "sufficient notice" that Adams would seek to present expert testimony from Dr. McCombs at trial. The defendants' Reply attempts to rebut Adams' arguments and argues that exclusion is warranted under Rule 37. Thus, the parties have both addressed the factors relevant to the Rule 37 analysis.

The court therefore faces three questions: (1) did the plaintiff violate Rule 26(a) by failing to make a timely disclosure (here, by failing to disclose expert testimony in compliance with the CMO); (2) was the failure to disclose that information or witness substantially justified or harmless; and (3) what sanction should the court impose.

**B. Application**

    1. Violation of Rule 26(a)

The CMO governs the timing of Adams' expert disclosures in this case. The CMO states that Adams was required to disclose "any expert witnesses" by August 30, 2014. Adams did not declare any expert witnesses on that date, nor did Adams seek an extension of time to do so. Instead, Adams waited until December 1, 2014 – three months later – to forward to defense counsel a copy of correspondence between his counsel and Dr. McCombs. Two weeks later, after the defendants had requested leave to file the instant motion for partial summary judgment, Adams belatedly moved to extend his expert disclosure deadline – over ten weeks after it had expired. Because he did not provide good cause, the court denied the requested extension.

Having missed the court's deadline, Adams now argues that, in the alternative, the CMO did not actually obligate him to identify Dr. McCombs by August 30, 2014. Adams argues that ¶ H of the CMO applied only to Rule 26(a)(2)(B) experts, not non-retained treating physician experts such as Dr. McCombs. Adams' position ignores the plain language of ¶ H, which obligated him to "declare the identity of *any* expert witnesses *and* provide all of the information specified in Rule 26(a)(2)(B)" (emphases added). The CMO indicates that Adams was to identify "any" experts by that deadline, not just Rule 26(a)(2)(B) experts. Regardless, Adams did not provide, and still has not provided, a disclosure that meets the Rule 26(a)(2)(C) criteria.

    2. The Failure to Disclose Was Not Substantially Justified or Harmless

16

Adams does not contend that his failure to comply with Rule 26(a) and the CMO was substantially justified, nor is any justification – let alone a "substantial" justification – apparent in the record.

As to whether the error was "harmless," the burden is on the potentially sanctioned party – here, Adams – to show harmlessness. *Roberts*, 325 F.3d at 782; *see also Hall*, 2006 WL 2375677, at *1. Generally, to show harmlessness, a plaintiff must show "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer*, 317 F.3d at 692. Here, Adams has not established either of the necessary elements. First, he has not shown that he made an "honest mistake." Adams acknowledges that expert testimony is required to prove certain categories of claimed damages. The expert disclosure deadline was set forth in the CMO. Without explanation, Adams let this crucial deadline pass without making an expert disclosure, thereby failing to disclose a necessary expert opinion on an essential element of his case. Even after the defendants reported to the court on October 1, 2014 that Adams had failed to identify any experts, Adams did not immediately seek a retroactive extension or attempt to declare an expert. Adams has failed to comply with court-ordered deadlines and essential expert disclosure requirements. Under the circumstances, the court finds that Adams' non-compliance with the CMO was not an honest mistake, that the failure was not "harmless," and that sanctions are warranted. *See Jackson v. Steele*, 2014 WL 4520938, at *4 (E.D. Ky. Aug . 26, 2013); *Blair v. GEIOC Gen Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013).

Furthermore, even if Adams could show that his failure to comply with the CMO was an "honest mistake," he has not shown that the defendants had sufficient knowledge as of the expert deadlines that Dr. McCombs would testify at trial as an expert concerning whether the accident caused certain categories of claimed damages. Adams did not make his "initial" disclosures until

17

30 days *after* his own expert disclosure deadline had passed, the October 1, 2014 disclosures did not identify Dr. McCombs as an expert witness or otherwise comply with the Rule 26(a)(2)(C) disclosure requirements in any case, and the plaintiff did not furnish the November 15, 2014 counter-signed version of the October 29, 2014 letter between plaintiff's counsel and Dr. McCombs until December 1, 2014 – after all of the relevant deadlines had passed.

For these reasons, the court finds that Adams' failure to comply with the CMO and his associated Rule 26(a)(2)(C) disclosure obligations was not substantially justified or harmless.

### 3. Appropriate Sanction

Adams argues that the court should permit him to present testimony from Dr. McCombs at trial and permit him to depose Dr. McCombs in the interim (presumably towards that end). The court finds no basis to impose a lesser sanction than to preclude Dr. McCombs from offering expert testimony at trial. Without justification, Adams failed to make a required expert disclosure on issues for which expert testimony is required. Even after being placed on notice of this deficiency, he waited until ten weeks after the deadline had passed to move for an extension retroactively and failed to show good cause for any of the delays. Adams' failure to comply with the CMO alone justifies exclusion, because the Sixth Circuit has recognized that Fed. R. Civ. P. 16(f)(1)(C) grants district courts discretion to enforce its scheduling orders. *See Jackson*, 2013 WL 4520938, at *5 (citing *Estes v. King's Daughter's Med. Ctr.*, 59 F. App'x 749, 752 (6th Cir. 2003)); *see also* Fed. R. Civ. P. 26(a)(2)(C) (stating that a party must disclose its experts "at the times and in the sequence that the court orders"); *Campos*, 2009 WL 2252257, at *11.

Furthermore, if the court were to permit Dr. McCombs to testify as an expert for Adams, it would require the court to reset the remaining CMO deadlines, including extending the expert deadlines for both parties, the dispositive motion deadlines, and the trial date. Also, the

18

defendants relied on Adams' silence with respect to experts, which led the defendants to believe that Adams would not be presenting expert testimony on certain issues for which expert testimony is required. If Dr. McCombs is permitted to testify, the defendants will be forced to incur additional litigation costs to examine Dr. McCombs' opinions and to retain an expert (or experts) to address those opinions.

Finally, as a more general matter, Adams' counsel seems to have shown no regard for the deadlines set by this court: Adams failed to make initial disclosures or expert disclosures, unilaterally filed and served untimely "initial disclosures" six months late without seeking leave of court, and waited months to ask for the extension of long-expired deadlines. The court's orders are not recommendations – they are important deadlines designed to facilitate the disclosure of information and the timely disposition of cases. Wholesale disregard for these deadlines does not justify leniency.

In sum, the court finds that, under Fed. R. Civ. P. 37(c)(1), exclusion of Dr. McCombs as a testifying expert is warranted here.

4. Summary Judgment

The parties agree that, without expert testimony, Adams cannot recover damages for past and future medical expenses, permanent impairment, or lost earning capacity. Because Adams did not disclose any experts and will be precluded from presenting expert testimony from Dr. McCombs at trial, he cannot prove those categories of damages. Partial summary judgment in favor of the defendants – with respect to those damages only – is therefore warranted.

5. Final Issues

The court will grant the defendant's motion, which will preclude Adams from recovering damages for past and future medical expenses, permanent impairment, and lost earning capacity.

What is not clear in the briefing is what categories of claimed damages will remain for trial in light of the court's decision. The court will order Adams to file a notice stating the categories of damages that he will seek to recover without expert testimony.

## **CONCLUSION**

For the reasons stated herein, the defendant's motion will be granted. The court will enter partial summary judgment for the defendants, as discussed herein.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge